FILED
HARRISBURG, PA

OCT 07 2024

PER _____  TBl
DEPUTY CLERK

1

2   UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF PENNSYLVANIA

3

4

| | |
|---|---|
| Kristina-Lynn:Eisenacher ) | Case No.: 16-FAM-01318 |
| ) | |
| Plaintiff ) | |
| ) | The Honorable Judge Connor |
| vs. ) | |
| ) | |
| ) | **COMPLAINT FOR** |
| COURT OF COMMON PLEAS OF ) | **EMERGENCY INJUNCTIVE** |
| DAUPHIN COUNTY, JUDGE ROYCE ) | **RELIEF DECLARATORY** |
| MORRIS, JUDGE JEFFREY ENGLE OF ) | **RELIEF, 42 U.S.C. § 1983,** |
| DAUPHIN COUNTY, SUPERIOR ) | **FEDERAL REMOVAL AND** |
| COURT OF CALIFORNIA, COUNTY ) | **OTHER FEDERAL CLAIMS** |
| OF SAN MATEO, JUDGE ELIZABETH ) | |
| HILL, JUDGE RACHEL HOLT, JUDGE ) | Notice of Related Case: |
| SARA BURDICK ) | |
| ) | |
| Defendants ) | |
| ) | |

14

15   Dear Judge Connor:

16   Thank you for reading my papers and your consideration of my urgent plea for
     your assistance. Your Honor, in the spirit of Johnson v. City of Shelby, 574 U.S.

17   10, 11 (2014), I present a valid grievance and am in dire need of relief. As the
     Supreme Court noted in Johnson, "Federal pleading rules call for 'a short and

18   plain statement of the claim showing that the pleader is entitled to relief'; they
     do not countenance dismissal of a complaint for imperfect statement of the legal

19   theory supporting the claim asserted." Even if my application of legal theory is
     not perfect, the facts presented constitute a valid grievance that demands

20

21   EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
     U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

attention and remedy. I understand self-represented litigants are challenging and even frustrating for Judges as inexperienced in the law and courtroom. I sincerely want you to know I study the law day and night to save and protect my daughter from the horrible situation we are in and am trying my best to provide you with my most valiant and capable effort and appreciate your patience with my shortcomings and express my gratitude for your time and attention to my plea for your protection and urgent intervention.

I submit to you the following for consideration:

Plaintiff Kristina-Lynn Eisenacher ("Plaintiff"), hereby files this Complaint for Emergency Injunctive Relief, Declaratory Relief, and Damages under 42 U.S.C. § 1983, stating as follows:

I. INTRODUCTION

1. This matter is fundamentally simple: NO JURISDICTION. VOID CASE. That's it. It has been made to appear complicated by the unwillingness of the courts to acknowledge the lack of jurisdiction, fraud and void inception of this case and continue proceeding in compounding and ongoing due process violations that have infected this case from it's fraudulent inception.

2. This case arises from a shocking abuse of judicial power that has facilitated interstate kidnapping, fraud, and the systematic dismantling of parental rights. Eisenacher, a Pennsylvania resident and the sole legal parent of minor child E.H., seeks immediate federal intervention to halt ongoing, egregious violations of her and E.H.'s fundamental constitutional rights.

3. The gravity of this situation cannot be overstated. As noted in Hardwick v. County of Orange, 844 F.3d 1112, 1118 (9th Cir. 2017), "No official with an IQ greater than room temperature in Alaska could claim that he or she did not know that the conduct alleged violated both state and federal law." In this case, fraud and perjury were used to deprive a mother and daughter of their fundamental rights in a manner equally obvious to any reasonable person in striking similarity to this case.

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 2 of 27

4. Eisenacher is extraordinarily concerned that she and E.H. are trapped in a San Mateo racketeering ring commonly known in Silicon Valley as "Kids-4-Crypto," comparable to the Pennsylvania "Kids For Cash" scandal, where children are effectively purchased through the Silicon Valley family courts. Outside the context of corruption in San Mateo, this case defies legal explanation.

5. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). Plaintiff seeks relief under multiple federal statutes, including but not limited to: a. 42 U.S.C. § 1983 and § 1985 for deprivation of constitutional rights and conspiracy b. 28 U.S.C. § 2201 for declaratory judgment c. 28 U.S.C. § 1651 (All Writs Act) for extraordinary relief d. 18 U.S.C. § 1201 (Federal Kidnapping Act) e. 18 U.S.C. § 2261 (Interstate Domestic Violence) f. 18 U.S.C. § 2261A (Interstate Stalking) g. 18 U.S.C. §§ 241 and 242 (Conspiracy Against Rights and Deprivation of Rights Under Color of Law)

6. The continuing effects doctrine applies, as the original fraudulent acts occurred in Dauphin County, Pennsylvania, with ongoing consequences obstructing Eisenacher's access to law enforcement and justice.

7. This action seeks to expose and remedy a shocking breakdown of the judicial system, vindicate Plaintiff's constitutional rights, and secure the immediate return of E.H. to her sole legal parent. The urgency of this matter cannot be overstated, as the San Mateo court is poised to make permanent its void and fraudulent orders, potentially resulting in the irreversible loss of Eisenacher's parental rights.

8. I have concurrently filed an EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND DECLARATORY RELIEF. Critically, I am in need of emergency relief as the San Mateo court has decided to entertain a motion tomorrow to make all their expired and demonstrably fabricated ex parte orders permanent. I appropriately filed mandatory judicial notice of lack of jurisdiction and declaratory relief - requiring a stay - and it wasn't denied - just admittedly not read and ignored - demanding I appear in San Mateo tomorrow.  I also filed a notice of inability to appear in person, also admittedly not review

1
2
3
4
5
6
7

or considered and the demand was reiterated - I am gravely concerned this is an effort to issue a default ruling - to deliberately evade all the constitutional violations in this matter - beyond the lack of jurisdiction. I have been denied due process of a hearing on any of these orders - stonewalled and ignored for years, been trying to rectify this in Pennsylvania for over a year both in your court and in the Dauphin County Court of Common Pleas and have still not had the merits considered due to procedural obstacles. Now San Mateo wants to just hand over my child permanently to her abuser, who is not a legal parent, without one evidentiary hearing EVER, based on a void "Request for Stipulated Order" obtained by fraud and without jurisdiction.

## II. NATURE OF THE ACTION

8
9
10
11
12
13

This matter is fundamentally simple, yet it has been unnecessarily complicated by the actions of the courts involved. At its core, this case is about jurisdiction, due process, and the violation of constitutional rights - it is emphatically NOT a custody case. There is no jurisdiction, no summons, no valid complaint, no due process, and no proof of service. What exists is merely a fraudulently obtained "Request for Stipulated Order," which was fraudulently concealed from Eisenacher for years and subsequently used to kidnap her daughter to another state where the child has allegedly been subjected to abuse, including child sexual abuse.

14
15
16
17
18

Eisenacher, a Pennsylvanian (born and raised) and unmarried woman, is the sole legal parent of daughter Ella (age 8). The child and mother irrefutably lived in Dauphin County. However, a case was opened in San Mateo County, California to "establish paternity" by Charles Hodgin. This action requires the child must live in San Mateo County as unambiguously stated on their form to initiate an action. Hodgin knowingly engaged in fraud, checking the box stating the child lived in San Mateo County.

19

The San Mateo Case docket shows the following:

20

- No Summons

21

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 4 of 27

1
2
3
- No Valid Complaint
- No Proof of Service
- No Required Forms (33 forms to initiate and obtain an order)
- A "Request For Stipulated Order" - with no signature of Eisenacher
- No Hearing

4
5
6
Official medical records, daycare records, news articles and other documents irrefutably show Ella and Eisenacher living in Harrisburg at the time of his filing and for YEARS. Conspicuously, Hodgin's "Request For Stipulated Order" was filed at 11am and signed by a Judge within hours according to the register of actions.

7
8
9
10
11
The simplicity of this case cannot be overstated: it is void ab initio. The ongoing nature of allowing this to continue only compounds the existing constitutional violations. Eisenacher has repeatedly requested that the void orders be vacated and has provided mandatory judicial notice of the court docket and official records that irrefutably confirm that she and the child were Pennsylvania residents. Despite this, both San Mateo and Dauphin County courts have failed to address these fundamental jurisdictional defects.

12
13
14
15
It is crucial to understand that there are no valid orders to appeal - just a fraudulent "Request for Stipulated Order" and a series of ex parte orders that are unappealable. This case transcends typical jurisdictional disputes, representing a shocking abuse of judicial power that has facilitated interstate kidnapping, fraud, and the systematic dismantling of parental rights and a child's right to safety and familial association.

16
17
This action arises from a fraudulent "establishment of paternity" proceeding initiated ultra vires, in violation of due process, and without Plaintiff's knowledge, which was subsequently used to kidnap and traffic her child across state lines.

18
19
20
The court record is devoid of any summons, valid complaint, proof of service, or hearing transcript, in contravention of fundamental procedural requirements. See Fed. R. Civ. P. 4(c); Cal. Civ. Proc. Code § 412.20. Critically, San Mateo

21

1    Superior Court's own rules explicitly state that for an establishment of paternity
     action, "THE CHILD MUST LIVE IN THE (SAN MATEO) COUNTY" to file.
2    The child irrefutably lived in Dauphin County, Pennsylvania at the time of
     filing, rendering the entire proceeding void ab initio.
3

4    The record contains only a spurious "Request for Stipulated Order" from a
     foreign jurisdiction, of which Plaintiff had no notice, in violation of
     constitutional due process requirements and the Uniform Child Custody
5    Jurisdiction and Enforcement Act (UCCJEA). The UCCJEA, as adopted in
6    California, explicitly requires notice to out-of-state parents. California Family
     Code § 3408 states: "Notice required for the exercise of jurisdiction when a
7    person is outside this state may be given in a manner prescribed by the law of
     this state for service of process or by the law of the state in which the service is
8    made. Notice must be given in a manner reasonably calculated to give actual
     notice but may be by publication if other means are not effective." This clear
9    statutory requirement for notice to out-of-state parents was flagrantly violated in
10   this case, rendering the proceedings void from their inception. The failure to
     provide notice to Eisenacher, an out-of-state parent, is a fundamental
11   jurisdictional defect that invalidates all subsequent proceedings.

12   This matter has never constituted a valid custody case. Charlie Hodgin, a legal
     stranger to E.H., has not established paternity or custody through any recognized
13   legal process. Under California law, a man who is not presumed to be a child's
     father and has not legally established paternity has no standing to seek custody
14   or visitation. See In re A.S., 180 Cal.App.4th 351, 361 (2009). Despite this clear
15   lack of standing, the judges of San Mateo Superior Court have improperly
     conferred rights and benefits upon Hodgin, failing to apply the strict scrutiny
16   standard required when infringing upon fundamental parental rights. See Troxel
     v. Granville, 530 U.S. 57, 65 (2000).
17

18   San Mateo Superior Court issued ex parte orders to kidnap the child from
     Pennsylvania, predicated solely on the void and fraudulent "Request for
     Stipulated Order." This action demonstrates a shocking disregard for the strict
19   scrutiny standard required when infringing upon fundamental parental rights, as
20   established in Troxel v. Granville.

21   EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
     U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

1  On September 11, 2019 Eisenacher had a scheduled restraining order against
   Hodgin in Dauphin County court. Judge Morris denied Eisenacher's request for
2  a continuance to obtain council and Eisenacher was not represented. Eisenacher
   further stated she did not feel capable of representing herself. Morris denied her
3  request and proceeded.

4  Eisenacher was ambushed by proceedings enforcing Hodgin's "ex parte order"
   predicated on his void case to "turn the child over to him using law
5  enforcement" and register his erroneous San Mateo case - seemingly precluding
6  Dauphin County from enforcing Eisenacher's actual fundamental rights as the
   sole legal parent.
7
   When Eisenacher informed Judge Morris she had no knowledge of the San
8  Mateo case ever being opened he didn't believe her.

9  Judge Morris was required to hold a jurisdictional hearing - which he did not do.

10 Judge Royce Morris erroneously gave full faith and credit to these void orders
   without due process and without conducting the required jurisdictional hearing
11 under the UCCJEA, thereby depriving Eisenacher of her rights as E.H.'s sole
   legal parent. See 28 U.S.C. § 1738A(c); Cal. Fam. Code § 3421(a).
12
   Prior to the hearing, Judge Morris and Judge Hill of San Mateo engaged in ex
13 parte communication in direct violation of UCCJEA requirements.

14 The UCCJEA mandates that parties be given notice of judicial conversations,
   the opportunity to be present and respond, and if unable to be present, are
15 provided a transcript and opportunity to respond. See Cal. Fam. Code § 3410.
   This violation mirrors the case of Halliday v. Halliday, 991 N.Y.S.2d 191 (App.
16 Div. 2014), where a New York court overturned a custody decision due to
17 improper ex parte communication between judges.

18 This case is even worse as Hodgin's void "establishment of paternity" means he
   is not a legal parent - and Judge Morris just handed her over to him with no due
19 diligence, no jurisdictional hearing, like it was no big deal. Ella had never been
   cared for or alone with Hodgin - she had never been away from her mother. She
20

1  was only 3 years old.

2  Judge Morris enforced San Mateo's order to use law enforcement to take the

3  child. Hodgin used Lower Paxton Police as his own private mercenaries and
   bounty hunters to enforce these void orders, deploying approximately six armed

4  officers to forcibly remove 3½-year-old E.H. from the "Follow Me Christian
   Daycare" on Old Jonestown Road. This action effectively restrained Eisenacher

5  and E.H.'s sister under threat of police force, facilitating the kidnapping of E.H.
   and her trafficking across state lines to San Mateo.

6  Following the kidnapping and interstate trafficking of E.H., executed without

7  jurisdiction and under duress, Eisenacher was denied a hearing for three months
   and all contact with her daughter, in violation of due process requirements for ex

8  parte orders. Cal. Fam. Code § 3124 (requiring hearing within 20 days). During
   this period, E.H. was allegedly subjected to abuse by Hodgin, who had no

9  documented history of caring for the child. Eisenacher was placed under
   extreme duress to comply with Hodgin's demands to maintain any access to her

10 daughter.

11 The actions of San Mateo Superior Court, Dauphin County Court of Common

12 Pleas, and Charlie Hodgin have resulted in the kidnapping, trafficking, and
   unlawful detention of E.H. This child has been forcibly abducted from her home

13 in Dauphin County, Pennsylvania, trafficked across state lines, and is now being
   unlawfully detained in San Mateo, California, against her will and against the

14 will of her mother, her sole legal parent. These actions constitute violations of
   several federal statutes, including but not limited to: a. The Federal Kidnapping

15 Act, 18 U.S.C. § 1201, which applies to cases where a person is kidnapped and
   transported across state lines. b. Interstate Domestic Violence, 18 U.S.C. § 2261,

16 which prohibits traveling across state lines to commit domestic violence. c.

17 Interstate Stalking, 18 U.S.C. § 2261A, which criminalizes interstate stalking
   and harassment. d. Mail Fraud, 18 U.S.C. § 1341, and Wire Fraud, 18 U.S.C. §

18 1343, for the use of interstate communications to further a fraudulent scheme. e.
   The Trafficking Victims Protection Act, 22 U.S.C. § 7102, which defines severe

19 forms of trafficking in persons to include "the recruitment, harboring,

20 transportation, provision, or obtaining of a person for labor or services, through

21 EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
   U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

1   the use of force, fraud, or coercion."

2   It's crucial to emphasize that Hodgin is not a legal parent and has no parental
    rights. He has unlawfully accessed the civil forum through criminal acts and
3   continues to leverage that access to commit further crimes. This case involves
    dozens of potential federal and state crimes.
4
    The unlawful detention of E.H. in San Mateo County is ongoing and constitutes
5   a continuing violation of Plaintiff's and E.H.'s constitutional rights. As the
    Supreme Court has held, "the separation of a child from its parent for even a
6   brief period constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373
7   (1976) (citing Stanley v. Illinois, 405 U.S. 645, 647-648 (1972)).

8   Furthermore, Hodgin's actions constitute extrinsic fraud and fraud upon
    interstate courts. Extrinsic fraud occurs when a party is prevented from fully
9   exhibiting their case by being kept in ignorance of the proceedings. See United
    States v. Throckmorton, 98 U.S. 61, 65-66 (1878). Here, Hodgin deliberately
10  concealed the fraudulent "Request for Stipulated Order" from Eisenacher,
    preventing her from contesting it. This fraud extends across state lines,
11  implicating both the San Mateo and Dauphin County courts.

12  Hodgin's unlawful access to the civil forum through fraud to commit crimes
    against Eisenacher, Ella, and even Dauphin County itself is a severe abuse of the
13  judicial system. As the Supreme Court has noted, "tampering with the
    administration of justice in the manner indisputably shown here involves far
14  more than an injury to a single litigant. It is a wrong against the institutions set
15  up to protect and safeguard the public." Hazel-Atlas Glass Co. v.
    Hartford-Empire Co., 322 U.S. 238, 246 (1944).
16
    Between April 2024 and August of 2024, Judge Jeffrey Engle of Dauphin
17  County further compounded these violations by refusing to require Hodgin to
    answer discovery to prove jurisdiction. Instead, Judge Engle merely accepted ex
18  parte proceedings from San Mateo without scrutiny. The UCCJEA required
    Judge Engle to schedule a hearing with the San Mateo judge and the parties
19  present on jurisdiction, which Eisenacher requested. Judge Engle dismissed this
20

21

request as "non-entertaining" without providing any legal basis for this decision. This refusal to hold a mandatory jurisdictional hearing is a clear violation of the UCCJEA and due process requirements.

Your Honor, the fundamental issues are clear: This case is void ab initio. Eisenacher remains E.H.'s sole legal parent by operation of law. The case was initiated through fraud, without jurisdiction, against a Pennsylvania resident with sole custody. San Mateo Superior Court has continued to entertain proceedings from a non-parent with no legal standing, in direct contravention of its own rules and established law. Dauphin County erroneously gave full faith and credit to a void order, becoming the legal proximate cause for years of alleged abuse that both courts continue to disregard through various procedural machinations.

The Court should not entertain arguments relating to abstention doctrines, timeliness, or other procedural defenses. The case is void on its face. There is no evidence of an evidentiary hearing on jurisdiction, no evidentiary hearing in a court of competent jurisdiction (or any court) for establishment of paternity, and no evidentiary hearing for an initial custody determination. These void orders must be vacated, and the law requires recognition of Eisenacher's status as sole legal parent and the immediate return of her daughter.

Your Honor, if you read nothing else in this complaint, understand this: This case is fundamentally simple. Neither San Mateo nor Dauphin County can produce a summons, complaint, proof of service, hearing transcript, or any evidence of Eisenacher's knowledge of these proceedings. There has never been an evidentiary hearing on jurisdiction, no valid establishment of paternity, and no initial custody determination. In fact, no evidentiary hearing has ever taken place in a court of competent jurisdiction—or any court—on any of these issues. Instead, both courts have engaged in evasive procedural games to stonewall Eisenacher and keep Ella captive.

Throughout these proceedings, the courts have failed to hold Hodgin accountable, effectively acting as de facto co-counsel and protecting him from being deposed and from discovery. This rubber-stamping of Hodgin's requests,

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

1  without applying the required strict scrutiny standard for infringement of
   parental rights, suggests either corruption on the part of San Mateo Superior
2  Court or total negligence and incompetence followed by attempts to cover up
   these failures.
3

4  The remainder of this pleading details the compounding due process violations
   and constitutional infringements that have infected these proceedings from the
5  outset. However, the core issue remains: this case is void ab initio, and Ella must
   be returned to her sole legal parent immediately.

6  This action seeks to expose and remedy this shocking breakdown of the judicial
7  system, vindicate Plaintiff's constitutional rights, and secure the immediate
   return of E.H. to her sole legal parent.

8  The actions of both San Mateo and Dauphin County courts constitute a clear
9  violation of the Equal Protection Clause of the Fourteenth Amendment. By
   favoring Hodgin's unfounded and demonstrably false claims over Eisenacher's
10 fundamental parental rights and irrefutable evidence, the courts have applied the
   law unequally, to the severe detriment of Eisenacher and E.H. This unequal
11 treatment is particularly evident in the courts' willingness to entertain and
   rubber-stamp Hodgin's ex parte motions based on false statements, while
12 simultaneously ignoring Eisenacher's irrefutable evidence, including the courts'
13 own records and official county documents.

14 Judge Rachel Holt's conduct in the San Mateo Superior Court exemplifies this
   pattern of abuse and unequal treatment: a. Judge Holt has allowed ex parte
15 orders to remain in place for years, far beyond their statutory expiration dates,
   without holding required hearings. These orders, based on demonstrably false ex
16 parte motions by Hodgin, have been rubber-stamped without scrutiny. b. Despite
   having been in possession of evidence of child abuse and of her own misconduct
17 for over a year, Judge Holt has kept this evidence off the official record. This
   action not only endangers E.H. but also obstructs the Commission on Judicial
18 Performance's investigation into Judge Holt's misconduct. c. Judge Holt has
   consistently stonewalled Eisenacher's attempts to present evidence and
19 arguments, effectively ignoring her pleas for justice and her child's safety. d.
20

This pattern of behavior suggests not mere negligence, but active complicity in the ongoing abuse of E.H. and the violation of Eisenacher's constitutional rights.

The actions of both San Mateo and Dauphin County courts constitute a clear violation of the Equal Protection Clause of the Fourteenth Amendment. By favoring Hodgin's unfounded and demonstrably false claims over Eisenacher's fundamental parental rights and irrefutable evidence, the courts have applied the law unequally, to the severe detriment of Eisenacher and E.H. This unequal treatment is particularly evident in the courts' willingness to entertain and rubber-stamp Hodgin's ex parte motions based on false statements, while simultaneously ignoring Eisenacher's irrefutable evidence, including the courts' own records and official county documents.

Furthermore, these proceedings flagrantly violate the spirit and letter of the Violence Against Women Act (VAWA), which aims to protect women and children from domestic violence and abuse. The courts' actions have instead facilitated and prolonged such abuse.

The courts' conduct also runs contrary to Kayden's Law, which prioritizes child safety in custody proceedings, and Piqui's Law, which aims to protect children from abuse in family court settings. By ignoring clear evidence of abuse and endangerment, the courts have failed in their duty to protect E.H.

It is a fundamental principle of law that state actors, including judges and court officers, who know about child abuse and refuse to act, are themselves complicit in that abuse. See DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989). The refusal of the San Mateo and Dauphin County courts to address the substantial evidence of abuse against E.H. constitutes state-sanctioned child abuse.

It must be emphasized that the UCCJEA was enacted precisely to prevent the type of child kidnapping that has occurred in this case, not to facilitate it. As stated in the official comments to the UCCJEA, "The increasing mobility of American society has made it imperative that custody orders be recognized and enforced in other states in order to discourage kidnapping by a parent who has

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 12 of 27

1  lost or fears losing a custody contest." Yet, in a perverse misapplication of the
   law, these courts have weaponized the UCCJEA to enable and legitimize the
2  very kidnapping it was designed to prevent.

3  Through their actions, the San Mateo and Dauphin County courts have not
   merely failed to uphold the law; they have actively rewarded, incentivized, and
4  encouraged Hodgin and his counsel's fraud, trafficking, and child abuse. This
   represents a total perversion of the law and a complete abdication of the courts'
5  fundamental duty to protect the rights of parents and the welfare of children.

6  The cumulative effect of these violations - the disregard for equal protection, the
   contravention of laws designed to protect women and children, the complicity in
7  child abuse, and the perversion of the UCCJEA - paints a disturbing picture of
8  systemic failure and judicial misconduct that demands immediate federal
   intervention.
9
   The continuing effects doctrine applies, as the original fraudulent acts occurred
10 in Dauphin County, Pennsylvania, with ongoing consequences obstructing
   Eisenacher's access to law enforcement and justice.
11
   Given the extensive interstate crimes involved, this Court should refer this
12 matter to Michelle Henry, Pennsylvania Attorney General, for criminal
   investigation.
13
   This is not a "California Matter." 1) The case was initiated and an order was
14 made by fraud and without jurisdiction against a Dauphin County resident 2) her
   child was effectively kidnapped and trafficked from Dauphin County 3) the sole
15 legal parent - Eisenacher is a resident of Dauphin County.

16 Our courts cannot and should not give full faith and credit to foreign
17 jurisdictions on void orders with no due process and just allow Pennsylvanians
   to be deprived of their liberty, property or children and offer up the assistance of
18 our law enforcement to unwittingly aid and abet such crimes and then send the
   injured party (Eisenacher) off to another state to litigate and endure
19 compounding and further harm.

20

21 EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
   U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Eisenacher has asked for mandatory judicial notice and declaratory relief in both courts and been literally ignored.

Given the courts' persistent refusal to acknowledge these jurisdictional issues and vacate the void orders, there is no available remedy except federal intervention. This action seeks urgent federal intervention to halt the ongoing, egregious violations of Eisenacher's and E.H.'s fundamental constitutional rights, declare void all proceedings stemming from the initial jurisdictional defects, and return the Plaintiff's child to her custody.

The actions of the defendant courts and judges have transcended mere error and entered the realm of active constitutional violations, creating a state-created danger and demonstrating shocking institutional indifference to the rights of the Plaintiff and her child.

In the spirit of Johnson v. City of Shelby, 574 U.S. 10 (2014), Plaintiff presents a valid grievance and is in dire need of relief. The procedural games employed by the opposing party in both state courts should not be entertained. This matter is simple: NO JURISDICTION. VOID CASE. That's it.

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable, particularly regarding the claims against the individual judges for their alleged corruption and misconduct.

## III. PARTIES

31. Plaintiff Kristina-Lynn Eisenacher is a citizen of Pennsylvania and the sole legal parent of minor child E.H.

32. Defendant Court of Common Pleas of Dauphin County is a state court located in Dauphin County, Pennsylvania.

33. Defendant Judge Royce Morris is a judge of the Court of Common Pleas of Dauphin County, sued in his official capacity.

34. Defendant Judge Jeffrey Engle is a judge of the Court of Common Pleas of Dauphin County, sued in his official capacity.

35. Defendant Superior Court of California, County of San Mateo, is a state court located in San Mateo County, California.

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 14 of 27

36. Defendant Judge Elizabeth Hill is a judge of the Superior Court of California, County of San Mateo, sued in her official capacity.

37. Defendant Judge Sara Burdick is a judge of the Superior Court of California, County of San Mateo, sued in her official capacity.

38. Defendant Judge Rachel Holt is a judge of the Superior Court of California, County of San Mateo, sued in her official capacity.

## IV. JURISDICTION AND VENUE

41. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

42. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Plaintiff resides in this district.

## V. CAUSES OF ACTION

## COUNT I: VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)

43. Plaintiff realleges and incorporates by reference all preceding paragraphs.

44. Defendants, acting under color of state law, have deprived Plaintiff of her rights secured by the Constitution and laws of the United States, including: a. Her Fourteenth Amendment right to due process; b. Her fundamental liberty interest in the care, custody, and control of her child; c. Her Fourth Amendment right against unreasonable seizure, as applied to the seizure of her child.

45. Defendants have systematically denied Plaintiff due process by: a. Failing to hold mandatory jurisdictional hearings; b. Refusing to provide findings of fact and conclusions of law; c. Denying evidentiary hearings; d. Rubber-stamping ex parte orders without proper scrutiny; e. Ignoring clear evidence of jurisdictional defects.

46. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to emotional distress, loss of companionship, and financial losses.

## COUNT II: VIOLATION OF EQUAL PROTECTION (42 U.S.C. § 1983)

47. Plaintiff realleges and incorporates by reference all preceding paragraphs.

48. Defendants have violated Plaintiff's right to equal protection under the law by: a. Disparate treatment of Plaintiff compared to Hodgin; b. Systematically favoring Hodgin's motions while denying Plaintiff's; c. Applying different standards of scrutiny to Plaintiff's evidence and arguments compared to Hodgin's.

## COUNT III: VIOLATION OF FIRST AMENDMENT RIGHT TO FAMILY ASSOCIATION (42 U.S.C. § 1983)

49. Plaintiff realleges and incorporates by reference all preceding paragraphs.

50. Defendants' actions have violated Plaintiff's First Amendment right to intimate family association, which protects the parent-child relationship.

51. By unlawfully separating Plaintiff from her child and preventing communication, Defendants have infringed upon this fundamental constitutional right.

## COUNT IV: VIOLATION OF THE THIRTEENTH AMENDMENT (42 U.S.C. § 1983)

52. Plaintiff realleges and incorporates by reference all preceding paragraphs.

53. Defendants' actions in compelling Plaintiff to repeatedly travel from Pennsylvania to California under threat of losing all contact with her child constitute a form of involuntary servitude prohibited by the Thirteenth Amendment.

54. The unlawful detention of E.H. in California, separating her from her sole legal parent and subjecting her to potential abuse, similarly violates the Thirteenth Amendment's prohibition on involuntary servitude.

## COUNT V: INSTITUTIONAL INDIFFERENCE (42 U.S.C. § 1983)

55. Plaintiff realleges and incorporates by reference all preceding paragraphs.

56. Defendants have demonstrated deliberate indifference to Plaintiff's and E.H.'s constitutional rights, amounting to an unofficial policy or custom of the courts.

57. This indifference is evidenced by: a. Failure to train and supervise judges

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 16 of 27

and staff on fundamental jurisdictional requirements and due process rights; b. A pattern of constitutional violations across multiple judges and proceedings; c. Failure of higher-ranking judicial officers and court administrators to intervene despite clear evidence of ongoing constitutional violations; d. Systematic ignoring of substantial evidence of child abuse and endangerment; e. Consistent approval and enforcement of orders that were void ab initio; f. Repeated refusal to hold mandatory jurisdictional hearings or address clear jurisdictional defects; g. Systematic denial of access to justice for Plaintiff.

## COUNT VI: STATE-CREATED DANGER (42 U.S.C. § 1983)

58. Plaintiff realleges and incorporates by reference all preceding paragraphs.
59. Defendants have created and enhanced the danger to E.H. by: a. Placing and keeping E.H. with Hodgin despite evidence of abuse; b. Ignoring professional recommendations for further investigation; c. Refusing to provide safe means of contact between Plaintiff and E.H.; d. Actively suppressing evidence of abuse and endangerment.

## COUNT VII: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)

60. Plaintiff realleges and incorporates by reference all preceding paragraphs.
61. Defendants have conspired to deprive Plaintiff of her constitutional rights, including her right to due process and her parental rights.
62. This conspiracy has resulted in the unlawful detention of E.H. and the ongoing violation of Plaintiff's rights.

## COUNT VIII: VIOLATION OF THE DECLARATORY JUDGMENT ACT (28 U.S.C. § 2201)

63. Plaintiff realleges and incorporates by reference all preceding paragraphs.
64. An actual controversy exists between Plaintiff and Defendants regarding the jurisdiction of the state courts and the validity of their orders.
65. Plaintiff is entitled to a declaration of her rights under federal law, including the Constitution and the Full Faith and Credit Clause as it

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 17 of 27

relates to enforcement of void orders.

## COUNT IX: VIOLATION OF THE PARENTAL KIDNAPPING PREVENTION ACT (28 U.S.C. § 1738A)

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.
67. Defendants' actions in enforcing and giving effect to custody determinations made without proper jurisdiction violate the Parental Kidnapping Prevention Act.
68. This Act provides federal standards for state courts' jurisdiction in interstate custody disputes, which have been flagrantly violated in this case.

## VII. MOTION FOR ORDER TO SHOW CAUSE AND FEDERAL REMOVAL

Plaintiff, Kristina-Lynn Eisenacher, hereby moves this Honorable Court for an Order to Show Cause and for Federal Removal of all related state court proceedings, stating as follows:

### A. ORDER TO SHOW CAUSE

1. Pursuant to this Court's inherent authority and Federal Rule of Civil Procedure 65, Plaintiff respectfully requests that this Court issue an Order to Show Cause directing the San Mateo Superior Court and the Dauphin County Court of Common Pleas to appear and demonstrate why: a) This Court should not declare all their orders in this matter void ab initio for lack of jurisdiction and due process violations; b) This Court should not issue an immediate injunction halting all their proceedings related to Plaintiff and minor child E.H.; c) This Court should not order the immediate return of E.H. to Plaintiff in Pennsylvania.
2. Plaintiff further requests that this Court, in issuing the Order to Show Cause: a) Set an expedited briefing schedule to address the urgency of this matter; b) Limit the scope of initial responses to jurisdictional issues only, specifically: i. For San Mateo Superior Court: Demonstrate valid jurisdiction, due process, summons, complaint, proof of service, hearing, and knowledge of Eisenacher in 2016 upon initiation of the action of

"establishment of paternity", 2017 upon issuance of the "Request for Stipulated Order" and jurisdiction to issue ex parte orders in 2019 to remove E.H. from Pennsylvania; ii. For Dauphin County Court: Produce evidence of the UCCJEA-compliant hearing on jurisdiction, including notice to parties, and justify the ex parte communication between judges with no transcript or opportunity for Eisenacher to respond; c) Require any factual assertions made in response to be submitted under penalty of perjury; d) Order Dauphin County to explain why Eisenacher was not granted a continuance to obtain counsel on such an extreme order, and why armed police officers were sent to a daycare to act as private mercenaries, threatening the mother and sister with police violence while the alleged abuser was escorted out the back door.

3. This Order to Show Cause is necessary to prevent further irreparable harm to Plaintiff and E.H., and to expedite resolution of the fundamental jurisdictional and due process issues at the heart of this case.

## B. FEDERAL INTERVENTION IS WARRANTED AND REQUIRED

4. Federal intervention in this case is not only warranted but required by law and precedent. As established in Mitchum v. Foster, 407 U.S. 225 (1972), federal courts have the power and, indeed, the obligation to enjoin state court proceedings in cases brought under 42 U.S.C. § 1983 where fundamental rights are at stake.

5. The systemic failures and alleged corruption in this case create the type of "unusual circumstances" that justify federal intervention under Younger v. Harris, 401 U.S. 37 (1971). While Younger generally counsels federal abstention, it explicitly allows for federal court action in cases of bad faith, harassment, or other exceptional circumstances, all of which are present here.

6. Moreover, the interstate nature of this case, involving fundamental constitutional rights and potential criminal conduct, places it squarely within this Court's jurisdiction and duty to adjudicate, as emphasized in Zwickler v. Koota, 389 U.S. 241 (1967). The Supreme Court has repeatedly stressed the duty of federal courts to decide cases properly

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 19 of 27

before them, particularly where state remedies have proven inadequate or illusory.

7. The allegations of systemic corruption, likened to a "Kids-4-Crypto" scheme, further necessitate federal oversight. As held in Dombrowski v. Pfister, 380 U.S. 479 (1965), federal courts may intervene in state proceedings where there is evidence of bad faith prosecution or harassment, both of which are alleged here.

8. Furthermore, while the domestic relations exception to federal jurisdiction exists, it does not apply here. As clarified in Ankenbrandt v. Richards, 504 U.S. 689 (1992), federal courts retain jurisdiction in domestic matters where, as here, the case primarily involves constitutional issues and allegations of state court misconduct rather than mere domestic relations issues.

9. Any concerns about suits against state entities are addressed by Ex parte Young, 209 U.S. 123 (1908), which allows suits against state officials for prospective injunctive relief to prevent ongoing violations of federal law, as sought here.

## C. FEDERAL REMOVAL

10. Pursuant to 28 U.S.C. § 1441, Plaintiff hereby removes all related state court proceedings to this federal court. This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 (federal question) due to the substantial constitutional and federal statutory issues involved, including but not limited to: a) Violations of due process under the 14th Amendment; b) Violations of the right to familial association under the 1st Amendment; c) Potential violations of the Federal Kidnapping Act, 18 U.S.C. § 1201; d) Potential violations of the Interstate Domestic Violence statute, 18 U.S.C. § 2261; e) Alleged conspiracy against rights and deprivation of rights under color of law, 18 U.S.C. §§ 241 and 242.

11. Removal is proper because: a) This case presents substantial federal questions central to the dispute; b) State court remedies have proven inadequate and potentially compromised; c) The interstate nature of the case and allegations of systemic corruption necessitate federal oversight;

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 20 of 27

d) The exceptional circumstances alleged here overcome any abstention concerns.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare all proceedings and orders in the San Mateo and Dauphin County courts void ab initio;

B. Issue an injunction ordering the immediate return of E.H. to Plaintiff in Pennsylvania;

C. Prohibit any further enforcement of the void orders or proceedings in this matter;

D. Award compensatory damages in an amount to be determined at trial;

E. Award punitive damages against the individual Defendants;

F. Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G. Initiate appropriate investigations into the conduct of all involved parties, including state court judges, for potential criminal charges and ethical violations;

H. Provide necessary protections and services to Plaintiff and E.H. as victims of these unlawful actions;

I. Grant Plaintiff's Motion for Order to Show Cause and Federal Removal as detailed herein;

J. Issue the requested Order to Show Cause;

K. Accept removal of all related state court proceedings;

L. Grant immediate injunctive relief halting all state court proceedings related to this matter;

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

1  M. Grant such other and further relief as the Court deems just and proper.

2  Dated: 10/07/2024

3  Respectfully submitted,

4  *[signature]*

5

6  Kristina-Lynn: Eisenacher, Plaintiff Pro Se

7  400 Market Street, Lemoyne, PA 17043 kristinalyn@proton.me

8  (717) 761-0890

9

10  MEMORANDUM OF POINTS AND AUTHORITIES

11  I. INTRODUCTION

12  This memorandum supports Plaintiff Kristina-Lynn Eisenacher's complaint for
   emergency injunctive relief, declaratory relief, and damages under 42 U.S.C. §
13  1983 and other federal claims. The case arises from egregious violations of
   fundamental constitutional rights by state courts in Pennsylvania and California,
14  resulting in the unlawful detention of Plaintiff's child and ongoing deprivation of
   due process.
15

16  II. LEGAL ARGUMENT

   A. Lack of Jurisdiction and Void Proceedings
17
      1. The San Mateo Superior Court lacked subject matter jurisdiction from the
18       outset, rendering all subsequent proceedings void ab initio.

19  "A judgment is void if the court that rendered it lacked jurisdiction of the
   subject matter, or of the parties, or if it acted in a manner inconsistent with due
20

process of law." In re Estate of Buckley, 132 Cal. App. 4th 434, 443 (2005).

The record demonstrates that the San Mateo court never acquired proper jurisdiction over Plaintiff or her child, both residents of Pennsylvania. The UCCJEA, as adopted in California, mandates that California courts have jurisdiction to make an initial child custody determination only if California is the child's home state. Cal. Fam. Code § 3421(a)(1).

   2.  Void judgments can be attacked at any time.

"A void judgment [or order] is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars anyone." Bennett v. Wilson, 133 Cal. 379, 382 (1901).

   3.  The Dauphin County Court of Common Pleas erred in enforcing void orders from San Mateo.

"[F]ull faith and credit need not be accorded when the court of a sister state lacked jurisdiction." Kahn v. Kahn, 68 Cal. App. 3d 372, 382 (1977).

   4.  The actions of the state courts are akin to lawless violence when proceeding without jurisdiction.

"No State judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them. If he has no such right, and attempts to exercise it, he is guilty of a gross act of lawless violence." Ableman v. Booth, 62 U.S. 506, 524 (1858).

   5.  Pennsylvania has a historical precedent of defending its citizens against unlawful detention in foreign jurisdictions.

Prigg v. Pennsylvania, 41 U.S. 539 (1842), while dealing with a different subject matter, established Pennsylvania's right to protect its citizens from being unconstitutionally forced into foreign jurisdictions.

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 23 of 27

B. Due Process Violations

    1. The defendants have systematically denied Plaintiff due process throughout these proceedings.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

    2. The denial of mandatory jurisdictional hearings violates due process.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972).

    3. The gravity of due process violations in this case is comparable to those in Hardwick v. County of Orange.

"No official with an IQ greater than room temperature in Alaska could claim that he or she did not know that the conduct alleged violated both state and federal law." Hardwick v. County of Orange, 844 F.3d 1112, 1118 (9th Cir. 2017).

C. Violation of Fundamental Parental Rights

    1. The actions of the defendants have infringed upon Plaintiff's fundamental right to parent her child.

"The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000).

    2. State intervention in the parent-child relationship requires a compelling state interest and narrow tailoring.

"The fundamental liberty interest of natural parents in the care, custody, and

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 24 of 27

management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Santosky v. Kramer, 455 U.S. 745, 753 (1982).

3. The separation of Plaintiff from her child without due process violates the 13th Amendment.

In Nicholson v. Williams, 203 F. Supp. 2d 153 (E.D.N.Y. 2002), Judge Jack B. Weinstein held that removing children from their mothers solely because the mothers were victims of domestic violence violated the 13th Amendment:

"The government may not penalize a mother, not otherwise unfit, who is battered by her partner, by separating her from her children; nor may children be separated from the mother, in effect visiting upon them the sins of their mother's batterer." Id. at 253.

"Separating children from mothers who have been abused violates the mothers' and children's substantive due process rights and their right to be free from irrational punishment under the Thirteenth Amendment to the United States Constitution." Id. at 248.

D. State-Created Danger

1. The defendants' actions have created and enhanced the danger to Plaintiff's child.

"[S]tate actors may be held liable under § 1983 when they affirmatively place an individual in danger." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006).

2. The court's refusal to consider evidence of abuse constitutes deliberate indifference.

"Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions." Dorsey v. Barber, 517 F.3d 389, 399 (6th Cir. 2008).

E. Institutional Indifference

   1. The pattern of constitutional violations demonstrates an unofficial policy or custom of the defendant courts.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

   2. The failure to train and supervise judges on fundamental jurisdictional requirements constitutes deliberate indifference.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

F. Conspiracy to Interfere with Civil Rights

   1. The coordinated actions of the defendants suggest a conspiracy to deprive Plaintiff of her constitutional rights.

"To prove a conspiracy under § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).

   2. The actions of the defendants may constitute interstate domestic violence and human trafficking.

The Violence Against Women Act, 18 U.S.C. § 2261, prohibits interstate travel

1    with the intent to kill, injure, harass, or intimidate a spouse or intimate partner.

2    The Trafficking Victims Protection Act, 22 U.S.C. § 7102, defines severe forms
     of trafficking in persons to include "the recruitment, harboring, transportation,

3    provision, or obtaining of a person for labor or services, through the use of
     force, fraud, or coercion."

4
     G. Declaratory Relief

5
        1. Plaintiff is entitled to a declaration of her rights under federal law.

6
     "In a case of actual controversy within its jurisdiction... any court of the United

7    States, upon the filing of an appropriate pleading, may declare the rights and
     other legal relations of any interested party seeking such declaration, whether or

8    not further relief is or could be sought." 28 U.S.C. § 2201(a).

9    H. Violation of the Parental Kidnapping Prevention Act

10      1. The defendants' actions violate the PKPA's jurisdictional requirements.

11   "A child custody or visitation determination made by a court of a State is
     consistent with the provisions of this section only if... such court has jurisdiction

12   under the law of such State." 28 U.S.C. § 1738A(c)(1).

13   I. Inapplicability of Rooker-Feldman and Younger Abstention

14      1. The Rooker-Feldman doctrine does not apply to void judgments.

15   "Rooker-Feldman does not apply to void state court judgments." In re Sun
     Valley Foods Co., 801 F.2d 186, 189 (6th Cir. 1986).

16
        2. Younger abstention is inappropriate where there are allegations of bad

17         faith, harassment, or other extraordinary circumstances.

18   "[E]ven where the Younger doctrine would normally apply, federal courts can
     issue injunctions against the state court proceedings if there are extraordinary

19   circumstances, such as bad faith or harassment by state officials." Younger v.
     Harris, 401 U.S. 37, 54 (1971).

20

21   EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
     U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

J. Irreparable Harm and Damages

1. Deprivation of constitutional rights, even for minimal periods, constitutes irreparable injury.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

2. Damages for unlawful detention should be calculated on a daily basis.

In Trezevant v. City of Tampa, 241 F.3d 1308 (11th Cir. 2001), the court upheld an award of $22,500 for an unlawful detention lasting 16 hours and 20 minutes.

In Latta v. City of Los Angeles, No. CV064552ABC(RCx) (C.D. Cal. 2010), the court awarded $3,000 per hour for unlawful detention.

K. Intentional Infliction of Emotional Distress

The conduct of the defendants meets the standard for intentional infliction of emotional distress as outlined in Restatement (Second) of Torts § 46 (1965):

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

L. Plaintiff's Right to Relief Despite Imperfect Legal Theory

"Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, 574 U.S. 10, 11 (2014).

M. No Adequate State Court Remedy Available

1. The lack of an adequate state court remedy justifies federal intervention.

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 28 of 27

"[W]hen state procedural law purports to bar presentation of federal claims, federal courts must determine whether the state law provides fair and adequate remedies." Felder v. Casey, 487 U.S. 131, 151 (1988).

    2.  The systematic denial of due process in state courts has effectively foreclosed any adequate state remedy.

"[I]f the plaintiff's allegations are true, then the state remedies are inadequate by definition, because the very officers who would determine the viability of the plaintiff's claim in state court are the same individuals who have allegedly conspired to deprive the plaintiff of his rights." Ratliff v. City of Milwaukee, 795 F.2d 612, 628 (7th Cir. 1986).

    3.  The state courts' persistent refusal to address jurisdictional issues and evidence of abuse demonstrates the inadequacy of state remedies.

"[W]here the state remedies are inadequate or where there is a showing of futility or lack of reasonable availability, exhaustion will not be required." McNeese v. Board of Education, 373 U.S. 668, 674-676 (1963).

    4.  The extraordinary circumstances of this case, including evidence of judicial misconduct and institutional indifference, render state remedies ineffective.

"If the state courts are conducting a trial in bad faith or for purposes of harassment, or if other extraordinary circumstances exist which create a threat of irreparable injury both great and immediate, federal intervention is warranted." Kugler v. Helfant, 421 U.S. 117, 123 (1975).

    5.  The ongoing deprivation of Plaintiff's fundamental rights requires immediate federal intervention.

"When federal rights are subject to destruction by state procedural rules, those rules must yield to the paramount federal interest." Felder v. Casey, 487 U.S. 131, 152 (1988).

N. Loss of Subject Matter Jurisdiction Due to Judicial Misconduct

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 29 of 27

1. The egregious misconduct of Judge Rachel Holt and the court's willful ignorance of evidence of child abuse has resulted in a loss of any jurisdiction San Mateo might have claimed.

"When a court engages in an egregious abuse of authority, it loses subject matter jurisdiction." Armstrong v. Obucino, 300 F.3d 637, 644 (7th Cir. 2002).

2. The court's failure to act on clear evidence of abuse and endangerment of a child constitutes such an egregious abuse of authority.

"Judges who willfully abuse their judicial power and ignore their judicial responsibilities lose their judicial authority and the protection of judicial immunity." Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988).

3. The actions of Judge Holt, including: a. Placing Plaintiff under a restraining order for reporting abuse; b. Denying a hearing on this restraining order for 18 months; c. Subjecting Plaintiff to baseless contempt proceedings; d. Returning unopened evidence of child abuse; demonstrate a level of misconduct that strips the court of any claim to jurisdiction.

"A judge's actions which are taken in the complete absence of all jurisdiction may result in personal liability." Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986).

4. The San Mateo court's order to law enforcement not to provide services to Plaintiff and her daughter, effectively obstructing criminal investigation, further demonstrates the court's abuse of authority.

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity." United States v. Lee, 106 U.S. 196, 220 (1882).

5. The cumulative effect of these actions has been to create a state-sponsored avenue for child abuse and domestic violence, utterly perverting the purpose of the court.

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

1    "The courts are established to administer justice, and we cannot approve their
     action when they go beyond their statutory authority and assume unauthorized
2    powers." Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320, 327
     (2015).
3

     O. Unlawful Access to Civil Forum and Misapplication of UCCJEA
4
         1. Hodgin's unlawful access to the civil forum and self-awarding of rights
5            and benefits he does not legally possess constitutes a felony.

6    "Whoever, under color of any law, statute, ordinance, regulation, or custom,
     willfully subjects any person in any State, Territory, Commonwealth,
7    Possession, or District to the deprivation of any rights, privileges, or immunities
     secured or protected by the Constitution or laws of the United States ... shall be
8    fined under this title or imprisoned not more than one year, or both." 18 U.S.C. §
9    242.

10       2. The misapplication of the UCCJEA by both Dauphin County and San
            Mateo courts demonstrates a shocking lack of understanding of
11           fundamental legal principles.

12   "The UCCJEA is the exclusive method of determining the proper forum in child
     custody proceedings involving other jurisdictions." In re Marriage of
13   Fernandez-Abin & Sanchez, 191 Cal.App.4th 1015, 1037 (2011).

14       3. The courts' reliance on the child's presence in San Mateo for more than 6
            months is a gross misapplication of the UCCJEA.
15
     "Under the UCCJEA, the focus is on the circumstances at the time the
16   proceedings are commenced... Jurisdiction is determined based on the
     circumstances when the proceeding is commenced and is not affected by later
17   events." In re Marriage of Nurie, 176 Cal.App.4th 478, 492 (2009).

18       4. The fundamental rights of unmarried mothers, as established in Stanley v.
            Illinois, have been flagrantly disregarded.
19
     "[T]he State's interest in caring for Stanley's children is de minimis if Stanley is
20

21   EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
     U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

shown to be a fit father. It insists on presuming rather than proving Stanley's unfitness solely because it is more convenient to presume than to prove." Stanley v. Illinois, 405 U.S. 645, 657-658 (1972).

5. The actions of the family court judges in this case amount to legislating from the bench, in direct contravention of their judicial role.

"It is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. 137, 177 (1803).

P. Non-Appealability of Minute Orders and Expiration of Ex Parte Orders

1. Minute orders are not appealable judgments.

"A minute order which is not signed by the court cannot be considered the court's final statement of decision on the matter, and is therefore not appealable." In re Marriage of Lechowick, 65 Cal.App.4th 1406, 1410 (1998).

2. Ex parte orders must be followed by prompt hearings to satisfy due process requirements.

"The issuance of an ex parte order must be followed by a noticed hearing in order to comport with due process requirements." In re Brittany K., 127 Cal.App.4th 1497, 1504 (2005).

3. Prolonged enforcement of ex parte orders without a hearing violates due process.

"Due process requires that a parent be given notice and an opportunity to be heard on any change in the status quo of custody." In re Claudia S., 131 Cal.App.4th 236, 247 (2005).

Q. State Officials Endangering Child and Loss of Jurisdiction Through Inaction

1. State officials who knowingly fail to protect a child from abuse can be held liable.

"State officials may be held liable under § 1983 for a failure to act when they

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 32 of 27

have a clearly established duty to do so." L.W. v. Grubbs, 974 F.2d 119, 123 (9th Cir. 1992).

2. Courts can lose jurisdiction through inaction or failure to protect.

"When a court engages in an egregious abuse of authority, it loses subject matter jurisdiction." Armstrong v. Obucino, 300 F.3d 637, 644 (7th Cir. 2002).

3. Failure to act on evidence of child abuse constitutes an abdication of judicial responsibility.

"A judge's 'complete abdication of judicial responsibility' is sufficient to lose judicial immunity." Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988).

R. Violation of Equal Protection

1. The courts' unequal treatment of parties violates the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

2. Favoring one party's claims over another's without justification violates equal protection.

"The Constitution prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996).

S. Violation of VAWA, Kayden's Law, and Piqui's Law

1. The courts' actions contradict the purpose of the Violence Against Women Act.

"VAWA reflects Congress's recognition that domestic violence, as a form of

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

Page 33 of 27

gender-motivated violence, 'is a national problem that affects the lives of women [and children] of all racial, social, religious, ethnic, and economic backgrounds.'" United States v. Morrison, 529 U.S. 598, 634 (2000) (Souter, J., dissenting).

    2. The courts' disregard for child safety violates the principles of Kayden's Law and Piqui's Law.

These laws prioritize child safety in custody proceedings and aim to protect children from abuse in family court settings. The courts' failure to consider evidence of abuse violates these principles.

T. Perversion of UCCJEA's Intent

    1. The UCCJEA was enacted to prevent child abduction, not facilitate it.

"The UCCJEA is designed to avoid jurisdictional competition and conflict with courts of other states in matters of child custody." In re C.T., 100 Cal.App.4th 101, 106 (2002).

    2. The courts' misapplication of the UCCJEA has subverted its purpose.

"The primary purpose of the UCCJEA is to avoid interstate jurisdictional conflicts and competition in child custody matters." In re Marriage of Nurie, 176 Cal.App.4th 478, 490 (2009).

III. CONCLUSION

Based on the foregoing authorities and the facts alleged in the complaint, Plaintiff has established a strong likelihood of success on the merits of her claims. The ongoing and irreparable nature of the harm suffered by Plaintiff and her child necessitates immediate injunctive relief from this Court. The egregious violations of constitutional rights, the void nature of the underlying state court proceedings, and the presence of extraordinary circumstances justify federal intervention in this matter.

Respectfully submitted,

EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42 U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES

1

2

*K Lynn*

3

Kristina-Lynn: Eisenacher, Plaintiff Pro Se

4

10/07/2024

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   EMERGENCY INJUNCTIVE RELIEF DECLARATORY RELIEF,, AND DAMAGES UNDER 28 U.S.C. § 2201, 42
     U.S.C. § 1983, AND OTHER FEDERAL CLAIMS WITH MEMORANDUM OF POINTS AND AUTHORITIES