IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTINA EISENACHER,** | : | CIVIL ACTION NO. 1:24-CV-1707 |
| **Plaintiff** | : | (Judge Neary) |
| v. | : | |
| **COURT OF COMMON PLEAS OF DAUPHIN COUNTY,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Kristina Eisenacher advances a sole claim pursuant to 42 U.S.C. § 1983 for alleged violations of her parental rights under the Due Process clause of the Fourteenth Amendment to the United States Constitution against five state-court judges. Defendants now move to dismiss the amended complaint with prejudice pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. The court will grant defendants' motions.

I.   **Factual Background & Procedural History**

Eisenacher is a Pennsylvania resident and the birth mother of E.H., an eight-year-old girl. (See Doc. 22 ¶ 58). Defendants are five state-court judges: the Honorable Royce Morris and Jeffrey Engle of the Court of Common Pleas of Dauphin County, (see id. ¶¶ 59, 63); and the Honorable Elizabeth Hill, Rachel Holt, and Sarah Burdick of the Superior Court of California for San Mateo County, (see

id. at 1 & ¶¶ 50, 60-63).[1]  Eisenacher alleges that defendants conspired to terminate her parental rights over E.H. in favor of a man named Charles Hodgin.  (See id. ¶¶ 9-10).  More specifically, she alleges that in October 2016, Hodgin initiated family law Case No. 16FAM01318 in the California Superior Court for San Mateo County to establish custody over E.H.—and purportedly did so using forged documents that claimed, among other falsities, that E.H. and Eisenacher resided together in California, though they actually lived in Pennsylvania at the time.  (See id. ¶¶ 7, 9-10).  These documents also included an agreement in which Eisenacher purports to limit her parental rights, which Eisenacher claims Hodgin fraudulently induced her into signing while on a trip to Pennsylvania.  (See id. ¶¶ 11-13).

Judge Hill was the first judicial officer to preside over the California family law case.  She allegedly "ordered law enforcement to take E.H. and give her to Hodgin" based solely on the falsified documents Hodgin submitted.  (See id. ¶ 21).  Hodgin proceeded to seek enforcement of the California court's order in Dauphin County, Pennsylvania, where E.H. was living at the time.  (See id. ¶ 23).  Judge Morris presided over the Pennsylvania enforcement action and issued an enforcement decree after speaking to Judge Hill on the telephone *ex parte*.  (See id. ¶¶ 23, 25).  Police then removed E.H. from preschool and "gave her to Hodgin," who

---

[1] The amended complaint also listed two court systems—the Court of Common Pleas for Dauphin County and the Superior Court of California of San Mateo County.  (See Doc. 22 at 1).  However, Eisenacher has since requested that these claims be voluntary dismissed.  (See Doc. 33 at 3 (California Court); Doc. 34 at 2 (Pennsylvania Court)).  In addition, the amended complaint erroneously refers to Judge Burdick as "Sara" Burdick.  (See, e.g., Doc. 22 ¶ 50; see Doc. 25 at 1 (identifying this error)).

2

returned to California with the child. (See id. ¶ 27). Eisenacher claims not to have known about the California custody case until well after the alleged abduction, when California District Attorney Investigator Matt Broad contacted her in 2019. (See id. ¶ 19).

In 2021, five years after it was initially filed, the California family law case was transferred to Judge Holt, who ultimately granted Hodgin full custody over E.H. (See id. ¶¶ 30, 44). Judge Holt was also assigned to a related case in which Eisenacher sought an order of protection against Hodgin—a request the court purportedly denied without crediting any information offered by Eisenacher; after conducting a hearing via zoom in which Eisenacher and her counsel were muted; and after conspiring with other judges, including Judge Hill, to fraudulently withhold relief. (See id. ¶¶ 33, 36, 43). As a result of these experiences, Eisenacher left San Mateo County California in 2022 and "is terrified to go back." (See id. ¶ 45).

Eisenacher subsequently returned to Pennsylvania and began filing lawsuits of her own, first in Pennsylvania and then in California. In April 2024, Eisenacher filed a case in the Court of Common Pleas for Dauphin County seeking restoration of her parental rights, which was assigned to Judge Engle. (See id. ¶ 49). She then filed a declaratory relief action in California, which was assigned to Judge Burdick. (See id. ¶ 50). Eisenacher claims that Judge Burdick has ignored her legitimate pleas and "plans to move forward with Hodgin's requested hearings" to terminate her parental rights on the basis of abandonment. (See id. ¶ 51).

Eisenacher alleges that Hodgin has sexually and physically abused E.H. for the entire time she has been in his custody. She also claims that Judges Holt,

3

Burdick, and Engle ignored evidence of the abuse she submitted to them—including photographs of physical injuries; previous disclosures of the purported abuse by E.H.; apparent changes in the child's behavior; and lab reports showing seminal fluid on E.H.'s body—and gave Hodgin custody over E.H., anyway. (See id. ¶¶ 31-35 47, 78). Defendants allegedly ignored other evidence that, in Eisenacher's view, demonstrates that Hodgin is not a fit parent. (See id. ¶ 37). Based on the foregoing, Eisenacher advances a single claim pursuant to 42 U.S.C. § 1983 that defendants violated her parental rights under the Fourteenth Amendment's Due Process Clause. (See id. ¶¶ 65-81). She seeks injunctive relief, (see id. ¶¶ 82-90, 99); declaratory relief, (see id. ¶¶ 91-98, 100); and costs and fees, (see id. ¶ 100).

Eisenacher filed the complaint initiating this matter on October 7, 2024, (see Doc. 1), and amended it once with the consent of all parties on December 11, 2024, (see Doc. 21 (granting joint motion to amend complaint); Doc. 22 (amended complaint)). To date, this court has denied two motions for a temporary restraining order against defendants for substantive deficiencies, (see Docs. 5, 32),[2] and has

---

[2] In these orders, the court preliminarily noted that abstention under Younger v. Harris, 401 U.S. 37 (1971), appears to be warranted because (1) "there are ongoing state proceedings that are judicial in nature," (2) those "proceedings implicate important state interests," *e.g.*, child custody, and (3) they "afford an adequate opportunity" for Eisenacher to raise her constitutional claims, see Lazaridis v. Wehmer, 591 F.3d 666, 670 (3d Cir. 2010) (*per curiam*) (citations omitted). The court further noted that defendants are almost certainly entitled to absolute immunity based upon the conduct alleged, which arises from their official duties in state family court proceedings, see Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (*per curiam*) ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts.") (citing Mireles v. Waco, 502 U.S. 9, 12 (1991) (*per curiam*)).

denied defendants' previously-filed motions to dismiss as moot upon the filing of the amended complaint, (see Doc. 23). Defendants now move to dismiss the amended complaint for lack of personal jurisdiction and, alternatively, for failure to state a claim.[3] (See Doc. 24 (California defendants' motion); Doc. 26 (Pennsylvania defendants' motion)). The motions are fully briefed and ripe for disposition.

## II. Legal Standards

Defendants seek dismissal of the amended complaint under Rules 12(b)(2) and 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. See FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324,

---

[3] Judges Hill, Holt, and Burdick move for dismissal pursuant to both Rules 12(b)(2) and 12(b)(6), (see Doc. 25 at 1), while Judges Morris and Engle move only under Rule 12(b)(6), (see generally Doc. 27).

5

330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. See id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

In addition, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker, 292 F.3d at 374 n.7).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Defendants seek dismissal of the amended complaint on at least four independent bases. (See Docs. 25, 26). The court finds that two of these grounds—Younger abstention and absolute judicial immunity for official acts—provide sufficient, independent, and alternative reasons to dismiss the amended complaint without the need for any discovery. Each is discussed in turn below.

#### A. Younger Abstention

Lower federal courts must abstain from hearing a case where: (1) "there are [parallel and] ongoing state proceedings that are judicial in nature," (2) those "proceedings implicate important state interests," and (3) they "afford an adequate opportunity" for the federal plaintiff, here Eisenacher, to raise her constitutional claims. See Lazaridis, 591 F.3d at 670 (citations omitted). Each of these three prerequisites is met on the face of the amended complaint. First, Eisenacher explicitly states that the state-court custody proceedings regarding E.H. are ongoing; she even requests that those proceedings be enjoined—a request that would be unnecessary if the state judicial process had already completed. (See

Doc. 22 ¶¶ 86-89). Second, the issue involved in the case—child custody—implicates important state interests. See, e.g., Mikhail v Kahn, 991 F. Supp. 3d 596, 628 (E.D. Pa. 2014) (collecting cases holding that child custody proceedings implicate important state interests for purposes of Younger abstention) (citing, *inter alia*, Lazaridis, 591 F. 3d at 671 & n.5), aff'd, 572 F. App'x 68 (3d Cir. 2014) (nonprecedential). Lastly, Eisenacher's amended complaint describes multiple opportunities she had to air her constitutional claims in state court. (See Doc. 22 ¶¶ 33, 36-37, 43, 51). That she is dissatisfied by defendants' respective responses to the information she presented to them directly undermines Eisenacher's claim that she did not have an adequate opportunity to present her constitutional arguments.

Moreover, the factual material in Eisenacher's amended complaint does not support her argument that the bad-faith exception to Younger applies under the circumstances alleged. (See Doc. 23 at 2-3); see also Younger, 401 U.S. at 48-54 (discussing Dombrowski v. Pfister, 380 U.S. 479 (1965), and holding that lower courts need not abstain under Younger if plaintiff demonstrates that state-court proceedings were initiated in bad faith or that other extraordinary circumstances exist). To show that this escape valve applies in these circumstances, Eisenacher must plead facts showing that defendants displayed such bias that abstention risks her due process right to a fair adjudication in state court. Mikhail, 991 F. Supp. 2d at 631 (quoting Brooks v. N.H. Sup. Ct., 80 F.3d 633, 640 (1st Cir. 1996)). The amended complaint merely asserts dissatisfaction with credibility determinations made by state courts, not bad faith on the part of defendants or other extraordinary cause. (See Doc. 22 ¶¶ 7, 9, 10, 21, 31-35, 47, 51). The allegations that Hodgin

8

initiated the proceeding using falsified documents, (see id. ¶¶ 7, 9-10), do not demonstrate that any defendant, as a state actor, behaved in bad faith. The amended complaint must be dismissed under Younger. See Mikhail, 991 F. Supp. 3d at 626-27 (noting that abstention would warrant dismissal of Section 1983 action when underlying state court proceeding was child custody dispute) (quoting Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 70 (2013)).

### B. Judicial Immunity

The amended complaint must also be dismissed for a second, independent reason: each of the remaining defendants is entitled to absolute judicial immunity for the conduct alleged. Judicial officers are afforded absolute immunity from civil liability arising from their official duties. See Azubuko, 443 F.3d at 303 (citing Mireles, 502 U.S. at 12). This immunity attaches even if the defendant judge acts in error, maliciously, or in excess of their authority; to succeed, a plaintiff must establish that the defendant "acted in the clear absence of all jurisdiction." See id. (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (internal quotation marks omitted)). It also exculpates judicial officers from personal-capacity claims, so long as the complaint is predicated on official actions. See O'Callaghan v. Hon. X, 661 F. App'x 179, 182-83 & n.4 (3d Cir. 2016) (nonprecedential) (affirming denial of leave to amend complaint to add personal-capacity claims against state judicial officer because district court determined that claims came within officer's judicial immunity, and emphasizing that state judicial officers are not persons subject to suit under Section 1983) (citing Callahan v. City of Philadelphia, 207 F.3d 668, 673-74 (3d Cir. 2000)).

Our court of appeals has set forth a two-step inquiry to assess claims of judicial immunity. First, a judge is immune only for judicial acts, *i.e.*, actions that, by their nature, are "normally performed by a judge." See id. at 182 (citing Gallas v. Sup. Ct. of Pa., 211 F.3d 760, 768 (3d Cir. 2000)). Second, a judicial officer may be liable for acts taken in the complete absence of jurisdiction, but remains immune from claims based upon acts that are simply in excess of their authority. See id. Allegations that a defendant conducted informal *ex parte* proceedings are insufficient, see Forrester v. White, 484 U.S. 219, 227 (1988); and even allegations of "grave procedural errors" or unfair or controversial decision-making cannot overcome a judicial-immunity defense, see Stump, 435 U.S. at 359; see also Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)). In addition, our court of appeals has explained that "'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" See Azubuko, 443 F.3d at 304 (quoting 42 U.S.C. § 1983).

Here, Eisenacher's claims for injunctive relief are barred because she has not plausibly alleged that a declaratory decree was violated or that declaratory relief is unavailable under the circumstances; in fact, she even requests declaratory relief in her amended complaint. (See Doc. 22 ¶¶ 91-98, 100). And defendants are immune from each of Eisenacher's remaining claims because they relate only to actions or omissions that fall within the scope of the defendants' judicial duties and that were not taken in the clear absence of jurisdiction. Eisenacher's vague allegations that defendants "acted in complete excess of jurisdiction" are, for one, conclusory and

need not be credited because they simply reiterate the required element of a claim. (See, e.g., Doc. 22 ¶¶ 21, 23, 33, 71, 75, 77, 79); Twombly, 550 U.S. at 545. The amended complaint does, however, list several informal *ex parte* hearings and discussions, both between defendants and Hodgin and between defendants themselves. (See id. ¶¶ 19, 21, 23, 25, 27, 31-35, 47, 51, 78). But, as previously noted, judicial officers do not forfeit absolute immunity by conducting informal *ex parte* hearings, see Stump, 435 U.S. at 359, and consulting with other jurists on a case is something judges normally do and is therefore a judicial function for present purposes, see O'Callaghan, 661 F. App'x at 182 (citation omitted). That defendants allegedly made poor credibility determinations when accepting fraudulent documentation associated with a lawsuit is no more than an allegation of "grave procedural error[]," and does not demonstrate the clear absence of all jurisdiction. See Stump, 435 U.S. at 359. The amended complaint is dismissed for failure to plead facts demonstrating that Eisenacher's claims are outside the scope of defendants' judicial immunity.

### C.     Leave to Amend

Defendants seek dismissal with prejudice. (See Doc. 25 at 1; Doc. 27 at 11). Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15 aims to offer the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." United States v. Thomas, 221 F.3d 430, 435 (3d Cir. 2000) (quotation omitted). In the seminal case of Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court of the United States provided guidance for when leave to amend

may be denied. The circumstances that weigh against granting leave include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. Foman, 371 U.S. at 182. Amendment is considered futile if the pleading, "as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted).

    Leave to amend is unwarranted for two reasons. First, amendment would be futile because the deficiencies identified with the amended complaint are legal in nature and cannot be resolved by way of a curative amendment. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Second, Eisenacher has been on notice of the problems Younger abstention and judicial immunity doctrines pose for her case since the court rejected her first motion for a temporary restraining order on October 8, 2024. (See Doc. 5). Although she has amended her complaint once since then, (see Doc. 22), she has not cured those fundamental deficiencies.

## IV. Conclusion

The court will grant defendants' motions to dismiss the amended complaint with prejudice. An appropriate order shall issue.

                                            /S/ KELI M. NEARY  
                                            Keli M. Neary  
                                            United States District Judge  
                                            Middle District of Pennsylvania

Dated:      February 14, 2025